AMERICAN STEEL & WIRE CO. v. RICHARDSON.

1. LIMITATION OF ACTIONS—BILLS AND NOTES—GUARANTY—INSTRUCTIONS.

Where a written guaranty expressly gave authority to take notes for any indebtedness which it covered and to renew or extend the same, there was no such unauthorized extension as to release the guarantor in an action begun April 27, 1911, on a note due May 1, 1905, given for goods purchased on January 14, 1905; and the court below correctly instructed the jury that the suit was not barred by the statute of limitations.

2. GUARANTY—REVOCATION—INTENT.

Where defendant wrote plaintiff in regard to a written guaranty given by the former guaranteeing payment of goods purchased by one H. from plaintiff, which was to remain in force until revoked, asking plaintiff to send the guaranty if H. was settled up, and expressing a desire "to have these matters all straightened up," and where plaintiff replied that H. was buying regularly, giving the amount he owed, and that it assumed defendant did not desire return of the guaranty, and requesting acknowledgment of receipt, which defendant failed to do, there was no revocation of the guaranty, even if defendant so intended.

3. Same—Silence—Intent—Estoppel.

> Defendant, having been advised by plaintiff of its interpretation of the letter, candor and good faith required him to declare himself, and by his silence he tacitly accepted plaintiff's construction.

Error to Kalamazoo; Weimer, J. Submitted April 7, 1916. (Docket No. 38.) Decided June 1, 1916.

Assumpsit by the American Steel & Wire Company, a foreign corporation, against Jerry A. Richardson on a written contract of guaranty. Judgment for defendant. Plaintiff brings error. Reversed.

*Weston & Fox,* for appellant.

*Don B. Sharpe,* for appellee.

STEERE, J. This action was brought on April 27, 1911, against defendant, Richardson, as guarantor of Fred G. Horsfall, to recover a balance due plaintiff for goods sold by it to Horsfall, as evidenced by a note which he gave plaintiff on January 14, 1905. A written guaranty by defendant and note by Horsfall, with a credit reducing it to $667.10 and interest, are properly pleaded and fully set out in plaintiff's declaration and bill of particulars.

Defendant pleaded the general issue, with special notice that the guaranty given by him had been revoked and canceled before the indebtedness for which this action is brought accrued; and that the claim was barred by the statute of limitations. The written guaranty given by defendant to plaintiff is as follows:

"VICKSBURG, MICH., 1—12—1893.
"AMERICAN STEEL & WIRE FENCE CO.,
   "Chicago, Ill.
"*Gentlemen:*
   "In consideration of your extending credit as you may see fit to F. G. Horsfall of Vicksburg, Mich., the undersigned, J. A. Richardson, of Vicksburg, Mich., do hereby guarantee to you and your assigns, the pay-

ment when due of any and all accounts and indebtedness (not exceeding the sum of $1,200.00) for or on account of goods and merchandise sold or advanced by you to said F. G. Horsfall or to his order.

"Notes and other evidences of indebtedness and securities may be received by you and your assigns, on account or in settlement of the indebtedness hereby guaranteed, and the same may be renewed and extended as you or your assigns desire, or may be dealt with in any way without notice to the undersigned, without in any way affecting the liability under this guaranty for any amount remaining unpaid in cash to said American Steel & Wire Company.

"Notice to the undersigned of sales or advances under this guaranty and of any default on the part of F. G. Horsfall is hereby waived.

"This guaranty to be a continuing one, and to remain in full force and effect until the written revocation thereof is received by said American Steel & Wire Company.

[Signed] "J. A. RICHARDSON."

It is stated in the charge of the trial court as conceded that this guaranty was executed January 12, 1903, instead of 1893 as inadvertently written. After receiving and accepting this guaranty plaintiff gave Horsfall credit and sold him goods on account from time to time as he desired and ordered them. On October 22, 1904, he was owing plaintiff a balance for goods purchased amounting to $688.19. On January 5, 1903, defendant also gave plaintiff a similar guaranty in behalf of a firm located at Scotts, called the Big Four Mercantile Company. In October of the following year he wrote plaintiff in relation to "these matters" as follows:

"VICKSBURG, MICH., 10—22, 1904.
" 'Received Oct. 25, 9:29 a. m., 1904,
" 'W. W. F. Dept.'
"AMERICAN STEEL & WIRE FENCE CO.
"*Gentlemen:*
"I find that our boys at Scotts (the Big Four Mercantile Company) are not buying any more fence of you.

I wish you would send back the guarantee I sent you. I also gave you one for Fred Horsfall a/c of this place. Are you still holding it? If so let me know all about it as I want these matters all straightened up. If he is settled up with you send it in also.

"J. A. Richardson."

To this letter plaintiff replied as follows:

"October 28, 1904.

"Mr. J. A. Richardson,
  "Vicksburg, Mich.
"*Dear Sir:*
  "In compliance with your request of the 22d we herewith inclose guaranty dated January 5th, 1903, covering all accounts and indebtedness between the Big Four Mercantile Co., Scotts, Mich., and this company.
  "As to the account of Mr. Fred Horsfall, would say that this gentleman is buying regularly from us, items now on our ledgers against him amounting to $688.19, under which circumstances we assume you do not desire return of the guarantee given us under date of January 12th, 1903.
  "Please acknowledge receipt, and oblige,
              "Yours truly,
                        "R. S. White,
                        "Credit Manager."

After waiting some time and receiving no answer to its letter, on January 14, 1905, plaintiff accepted Horsfall's order for and shipped to him at Vicksburg another carload of wire fencing receiving his note therefor, dated January 14, 1905, on February 20, 1905. Plaintiff ultimately collected from him all sums owing it for goods shipped him prior to the last carload for which the note in question was given, but its efforts to collect the balance yet owing on the last carload being unsuccessful this action was brought after much delay and correspondence with him and defendant.

The amount due plaintiff from Horsfall is apparently unquestioned, and each party requested a direct-

ed verdict. The trial court granted neither request, but instructed the jury that the account in settlement of which the note was given had not outlawed when this suit was begun, and submitted to them as an issue of fact whether defendant's guaranty had been revoked before the last carload of material was sold to Horsfall, saying in part:

"The question for you to determine is not necessarily what the plaintiff understood by that letter of October 22d, that is not the question. The question is what did Mr. Richardson intend by that letter of October 22d? Did he intend to revoke, recall and rescind that guaranty? If he did so intend, then did he express that intention in proper, appropriate, apt words, language such as would fairly and reasonably convey that intention to the average mind—to a fair, average business mind?"

The jury rendered a verdict for defendant, and judgment was entered thereon accordingly.

The court correctly instructed the jury as to the statute of limitations. It is true as pointed out by defendant that the last goods were sold to Horsfall January 14, 1905, over six years before this action was begun, but his note given therefor fell due May 1, 1905, and suit was brought April 27, 1911; and there was no such unauthorized extension as might operate to release a guarantor, for the guaranty itself expressly gives authority to take notes for any indebtedness which it covers and to renew or extend the same as plaintiff or its assigns may desire.

There was no issue of fact raised by the evidence for submission to the jury. The controlling facts in the case are not in dispute. Both sides requested a directed verdict. Though questioned, it may be conceded that defendant wrote the letter of October 22d, with intention to revoke his guaranty as to Horsfall; but his *animus revocandi* standing alone did not revoke and availed him nothing, unless he in clear and un-

equivocal language which could not reasonably be misunderstood gave plaintiff notice of his present purpose to then terminate the guaranty. The test is not what he meditated, but what he declared.

The alleged letter of revocation first dealt with the subject of defendant's guaranty for the business concern at Scotts, which he requested returned because they were not any longer dealing with plaintiff. He then inquired in regard to the guaranty he gave for Horsfall, asked plaintiff to let him know all about it, as he wanted "these matters" all straightened up, and concluded with the request to send Horsfall's guaranty also "if he is settled up with you." While he expresses a desire to have these matters all straightened up, he does not intimate when or how; he nowhere states that he terminates or revokes the continuing guaranty he had given and will no longer be bound by it, and asks for its return only on the contingency that "he has settled up with you," in the same letter in which he recalls the other because the parties have ceased doing business with plaintiff. The communication manifestly falls short of a distinct and definite notice of revocation of his written guaranty in such plain and unequivocal language that it could not be otherwise construed. In *Lanusse* v. *Barker*, 3 Wheat. (16 U. S.) 101, it was said of doubtful expressions in a subsequent letter relative to a written guaranty:

"It was in the defendant's power to have revoked his assumption, contained in the letter of the 9th, at any time prior to its execution, but it was incumbent on him to have done so, avowedly, and in language that could not be charged with equivocation."

Plaintiff did not, however, arbitrarily stand on its interpretation of defendant's alleged letter of revocation of October 22d (received October 25th), but with reasonable promptness, and before doing any further business with Horsfall, made reply, returning the guar-

anty of the parties "not buying any more fence" of it, fully answered all questions as to Horsfall, stated how his account stood, and that "the gentleman is now buying regularly from us," advised defendant of its understanding of his desires and construction of his letter, concluding with a request for acknowledgment. Defendant did not answer this letter, which he admits receiving. With his attention thus promptly called to plaintiff's interpretation of it, erroneous, as he now claims, he remained silent when he should and could have spoken, until additional goods were ordered by and sent to Horsfall. He knew that Horsfall then owed and continued to do business with plaintiff on the strength of his guaranty, not returned as he requested because the conditions under which he asked it did not exist. Thus advised, candor and good faith demanded that he then explicitly declare himself if it was his intent to revoke. Even if his construction of the letter was warranted in any event, by his silence he tacitly accepted the construction which plaintiff submitted to him.

Under the undisputed facts found in this record a verdict should have been directed for plaintiff. The judgment is therefore reversed, with costs to plaintiff, and a new trial granted.

STONE, C. J., and KUHN, MOORE, BROOKE, and PERSON, JJ., concurred. OSTRANDER and BIRD, JJ., did not sit.