NATIONAL BUILDING SUPPLY CO. *v.* SPENCER.

1. CONTRACTS — CONSTRUCTION — INTENT UNDER EXISTING CIRCUM-
   STANCES.

   A contract must be construed so as to effectuate the intent
   of the parties when it was made; and to ascertain the
   intent of the parties, a contract should be construed in
   the light of the circumstances existing at the time it
   was made.

2. GUARANTY—INTENT—CONSTRUCTION—DIRECTED VERDICT.

   In an action on a contract of guaranty, where a firm in
   which defendant's son was interested was buying building
   materials from plaintiff on credit, and defendant wrote
   plaintiff that he expected to see plaintiff within the next
   two weeks to make arrangements to guarantee the ac-
   count, and "in the meantime" would guarantee the pay-
   ment of any material furnished, but did not see plaintiff,
   as expected, and plaintiff continued to furnish material,
   relying on defendant's guaranty, of which he was in-
   formed, and which he never repudiated, the trial court's
   interpretation that the guaranty was limited to two weeks,
   *held,* too narrow, under the circumstances.

Error to Wayne; Goff (John H.), J. Submitted
June 15, 1920. (Docket No 21.) Decided July 20,
1920.

Assumpsit by the National Building Supply Com-
pany against Samuel B. Spencer on a contract of guar-
anty. Judgment for defendant on a directed verdict.
Plaintiff brings error. Reversed.

*Donnelly, Hally, Lyster & Munro,* for appellant.

*E. W. Mulford,* for appellee.

STONE, J. This is an action of assumpsit on a writ-
ten contract of guaranty. The plaintiff is a Maryland

corporation engaged in the business of selling building material and supplies, at the city of Baltimore. In February, 1916, Harry Levin, Jacob Cohen and Kenneth A. Spencer were engaged as copartners, under the firm name of the New York & Maryland Company, in the erection of an apartment building on the southeast corner of Linden avenue and Brooks lane in the city of Baltimore. The Kenneth A. Spencer above named is a son of the defendant. The New York & Maryland Company being unknown in Baltimore, and desiring to obtain building supplies from the plaintiff and establish a line of credit, gave the name of the defendant to the plaintiff, as a person who would vouch for their financial responsibility. A Mr. Joseph, representing the New York & Maryland Company, called upon the plaintiff and stated that the defendant, who was the president of the Spencer Lumber Company of Rochester, N. Y., would guarantee the account. So far as the record shows, the only interest the defendant had in the enterprise undertaken was the connection of his son, Kenneth A. Spencer, with the New York & Maryland Company, as one of the copartners. Accordingly, the defendant was written to by the plaintiff, regarding the financial standing of the New York & Maryland Company, to which an answer was received. This reply, which was signed "Spencer Lumber Company," written on the typewriter, was not satisfactory to the plaintiff, so on February 26, 1916, another letter was written by plaintiff to the defendant, as follows:

"EXHIBIT 10.
"February 26, 1916.
"MR. S. B. SPENCER, President,
    "Spencer Lumber Company,
        "691 Exchange Street,
            "Rochester, New York.
    "*Dear Sir:* We are in receipt of a letter from your company dated the 23d inst. in reply to ours of the

21st in connection with the financial standing of the New York & Maryland Company.

"The letter was signed in typewriting and did not bear the signature of any of the officers of your company, and did not fully cover the subject.

"A Mr. Joseph of your city called on us in reference to our company furnishing supplies to the New York & Maryland Company, and also as to what terms could be arranged in settling the accounts. He further stated that your son had an interest in the business. The following proposition was submitted to Mr. Joseph for your approval:

"The terms are to be a two months' note on the 10th of the month for the previous month's deliveries, with interest. As each note falls due we are to receive 50% in cash, and a renewal note at two months with interest for the balance. The notes to be indorsed by you personally.

"We have made one delivery of cement to the building, and as we are negotiating with them for front bricks, which would have to be ordered from the factories, we would highly appreciate an early reply, in order to enable us to make prompt deliveries.

"Very truly yours,
"The National Bldg. Supply Co.,
(Sgd.) "Philip Link,
"Treasurer."

In response to this letter the defendant, on February 28th, wrote the plaintiff the following letter:

"Exhibit 11.
"Spencer Lumber Company,
"Rochester, New York.
"February 28, 1916.
"National Building Supply Company,
"Baltimore, Md.

"*Gentlemen:* Answering your letter of the 26th regarding the New York & Maryland Company, and the talk you had with Mr. Joseph, regarding the payment of their account.

"The writer expects to be in Baltimore within the next two weeks, and will be glad to take the matter up with you while there.

"In the meantime, any material you let the New

York & Maryland Company have, for their present job, I will see that you get your money.

"Trusting this will be satisfactory, I remain,

"Yours very truly,

(Sgd.)  "S. B. SPENCER."

Accordingly, on receipt of this last letter, the plaintiff supplied the New York & Maryland Company with various materials and building supplies, which were used in the erection of the aforesaid apartment house. On March 23, 1916, the defendant, not having come to Baltimore within the two weeks as he said he expected to do, plaintiff wrote another letter calling attention to his letter of February 28th, and notified him that they were still making deliveries to the New York & Maryland Company and would continue to do so, as per his instructions. That letter was as follows:

"EXHIBIT 12.

"March 23, 1916.

"MR. S. B. SPENCER,

"691 Exchange Street,

"Rochester, N. Y.

"*Dear Sir:* Referring to your letter of February 28th, in which you stated that you expected to be in Baltimore in about two weeks to take up the matter of guaranteeing the account of the New York & Maryland Company, we are making deliveries to the above, and will continue to do so, as per your instructions.

"Up to the present writing, this month's purchases amount to five hundred dollars ($500.00) and we have a standing order to deliver 100 bags of cement per day.

"We have also booked their order for 80,000 front brick, which will be delivered as soon as received from the factory.

"May we ask you kindly to either call on us in person according to promise, or write us so as to enable us to have a definite understanding.

"Your prompt attention to this will be appreciated.

"Yours very truly,

"THE NATIONAL BUILDING SUPPLY CO.,

(Sgd.)  "PHILIP LINK,

"Treasurer."

The defendant answered this letter March 25th as follows:

"EXHIBIT 13.
"SPENCER LUMBER COMPANY,
"Rochester, N. Y.
"March 25, 1916.
"NATIONAL BUILDING SUPPLY CO.,
"North Avenue & Oak Street,
"Baltimore, Md.

"*Gentlemen:* We are just in receipt of your letter of the 23d regarding the New York & Maryland Company.

"I have intended going to Baltimore for the past month, but some way, I am pretty well tied up here for the time being, and cannot say just when I will be down there.

"I would suggest that the New York & Maryland Company see you, and make an arrangement for paying you so much a month, so as to keep their account on the proper basis.

"Trusting these matters can be arranged so everything will be satisfactory to you, until I can come to Baltimore, I remain,

"Yours very truly,
SBS/K                    "S. B. SPENCER."

As matter of fact defendant never went to Baltimore. Plaintiff continued supplying material until July 28, 1916, when the New York & Maryland Company became financially embarrassed, and operations ceased, at which time they owed the plaintiff $1,-920.89.

It afterwards developed that Kenneth A. Spencer, defendant's son, left the firm of the New York & Maryland Company, some time in April, 1916. Demand was made by letter on defendant August 23, 1916, to pay the amount due plaintiff for materials furnished the New York & Maryland Company in the construction of the said apartment house. On August 26th defendant answered this letter expressing surprise at the amount claimed, and stated that he had

nothing further to do with the account since his son left the New York & Maryland Company.

There appears to be very little dispute about the facts in the case. At the close of the testimony both parties moved for a directed verdict. It is said by counsel upon both sides that the case turns upon the meaning of the words: "In the meantime," contained in Exhibit 11. It was the defendant's contention, and in this he was sustained by the trial court, that these words refer to a distinct period of time, viz., two weeks, and it having appeared that all of the material supplied within the two weeks after the date of the letter (February 28th) was more than paid for by April 13th, by the New York & Maryland Company, there was consequently nothing due plaintiff.

On the other hand, it was and is the plaintiff's contention that these words, "In the meantime," do not refer to a fixed period of time of two weeks, but refer to the arrival of defendant in Baltimore, or until some other arrangement satisfactory to plaintiff was made, which might take place in two weeks, or a later date, and in support of this theory, plaintiff relies, not only on the letter itself, but upon the other letters set forth, and the acts and conduct of the defendant in relation thereto.

It was and is the plaintiff's contention that any ambiguity that may have existed in the meaning of these words, standing alone, was cleared away by the uncontradicted evidence in the case, and that they are therefore capable of but one interpretation, and that is as contended for by plaintiff, and that hence a verdict should have been directed for plaintiff, there being no dispute as to the facts.

In directing a verdict for the defendant the learned circuit judge charged the jury as follows:

"This case resolves itself largely into a question of law, and you are directed to find a verdict, of no cause

of action, for the defendant, for the following reasons: It is undisputed that the plaintiff treated its account against the New York & Maryland Company as an open and running account, and that, on March 14, 1916, the date to which the defendant's guaranty ran, the debits against the latter company were $346.88, and, if these were not paid, that sum, with accumulated interest, would be due from the defendant. From March 11th to April 13, 1916, however, there was credited on this account by the plaintiff $755.08, partly returned material, partly cash, $619.94. There being no evidence of how payments should be applied, they apply upon the debts in order of the dates; accordingly it appears that the guaranteed portion of the New York & Maryland Company's indebtedness has been paid. The extent to which the defendant guaranteed the payment of the account in favor of the plaintiff against the New York & Maryland Company is set forth in the letter of February 28, 1916, from the defendant to the plaintiff. That guaranty cannot be enlarged from the facts deduced, or changed without the act or consent of the defendant; the guaranty in question covers such indebtedness as may have been incurred by the New York & Maryland Company to the plaintiff within the two weeks' period, beginning with February 28, 1916, and does not cover any indebtedness contracted after the end of that two weeks' period. The guaranty of the defendant did not warrant the plaintiff continuing the supplying of material to the Baltimore job on order of the New York & Maryland Company after March 14, 1916, and looking to the defendant for the payment of the same, if the company did not pay. The guaranty of the defendant being an obligation of the defendant to pay the debt of another, must receive such interpretation and construction as is disclosed from the intention of the parties expressed in their letters, and especially in that of the defendant under date of February 28, 1916. Therefore, the clerk will take the verdict of the jury—of no cause of action."

Verdict and judgment were duly entered for defendant. The plaintiff has brought error, and error is assigned upon the refusal of the court to direct a

verdict for plaintiff; on directing a verdict for defendant, and upon specific portions of the charge.

It is urged in argument by plaintiff that candor and good faith demanded that defendant explicitly declare the guaranty terminated if that was his construction of it, when he saw that plaintiff was acting upon a different understanding of his letters, and that by his silence he tacitly accepted the construction which plaintiff submitted to him. It is urged by counsel for plaintiff that when read in connection with the previous letter (Exhibit 10) the answer (Exhibit 11) plainly indicates the following arrangement:

Plaintiff had written defendant that a Mr. Joseph had called on them, explaining that defendant's son had an interest in the New York & Maryland Company. Certain terms were agreed upon, subject, however, to the approval of defendant. Defendant, in answering this letter, instead of accepting these terms which included indorsements of notes, among other things, stated that he expected to be in Baltimore within the next two weeks, when he would be glad to take the matter up with them, but *in the meantime*, any material plaintiff let the New York & Maryland Company have for *the present job*, he would see that they got their money for; that it is very apparent that what he meant was that when he got down to Baltimore, where he expected to be very shortly, say in two weeks, he would take up with plaintiff while there the terms which were suggested in plaintiff's letter of February 26th, but in the meanwhile, until he could make some satisfactory arrangement with plaintiff, it was not to hold up the building, but go ahead and order the front bricks; and anything that plaintiff supplied the New York & Maryland Company with for their present job he would see that plaintiff was paid for. That this was the construction that was put upon the guaranty by plaintiff, and upon

which it acted, and it was upon this construction that defendant permitted plaintiff to act.

It is further urged by plaintiff that its construction of the meaning of the words "in the meantime," is found not only in the letter itself (Exhibit 11), but also in plaintiff's letter of March 23d, that it was still making deliveries and would continue to do so as per defendant's instructions, although this letter was written ten days after the expiration of the two weeks' period. In the further fact that defendant did not enlighten plaintiff in his answer of March 25th, if his understanding of the words "in the meantime" had some other meaning than that apparently understood by plaintiff, and in his suggestion in that letter that some arrangement be made with the New York & Maryland Company so as to keep the account on a proper basis, which suggestion was for defendant's protection. Also in the fact that the order for front bricks which first called for the guaranteeing of the account, could not, under the evidence, be ordered, manufactured and delivered within the two weeks referred to in the letter of February 28th. Also that nowhere in the correspondence, evidence or pleadings, was there a suggestion that the guaranty was limited to two weeks. Plaintiff cites the following authorities in support of its position: *American Steel & Wire Co.* v. *Richardson*, 191 Mich. 549; 1 Brandt on Suretyship & Guaranty (3d Ed.), §§ 174 to 178 inclusive; *R. L. Polk Printing Co.* v. *Smedley*, 155 Mich. 249.

It is the claim of the plaintiff that the guaranty was a qualified continuing one, for the reason that defendant did not, in clear and unequivocal language which could not reasonably be misunderstood, limit his liability to two weeks.

The defendant, in support of his contention, and as sustaining the holding of the court below, cites the general rule as to guaranty, and application of pay-

ments as stated in *Gard* v. *Stevens,* 12 Mich. 292, and in *Columbus Sewer Pipe Co.* v. *Ganser,* 58 Mich. 385, 391, to the effect that a guarantor is not liable beyond the express terms of his contract.

It is undoubtedly the rule that a contract is to be read and construed in the light of the circumstances attending its execution. We have said:

"It is elementary that a contract must be construed so as to effectuate the intent of the parties when it was made; and to ascertain the intent of the parties, a contract should be construed in the light of the circumstances existing at the time it was made." *Kunzie* v. *Nibbelink,* 199 Mich. 308.

The position occupied by the parties when they used the words expressed in the contract should be considered. *Ferris* v. *Wilcox,* 51 Mich. 105; *Ardis* v. *Railway Co.,* 200 Mich. 400, 411. Applying the above rules to the undisputed facts in this case, we are of the opinion that the trial court took too narrow a view as to the legal effect of the guaranty, when it held that by its terms the liability of defendant was limited to two weeks only. We think that the position of plaintiff, as stated above, is the correct one, and that under the undisputed facts found in this record a verdict and judgment should have been directed for the plaintiff for the amount of its claim.

The judgment is therefore reversed, with costs to the plaintiff, and a new trial granted.

STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred. MOORE, C. J., did not sit.