14 So.2d 137
WHITFIELD v. BIRMINGHAM TRUST & SAVINGS CO.

2 Div. 188.

Supreme Court of Alabama.

May 13, 1943.

Rehearing Denied June 30, 1943.

Pettus & Fuller, of Selma, and Hill, Hill, Whiting & Rives, of Montgomery, for appellant.

E. L. All, S. M. Bronaugh, and Bradley, Baldwin, All & White, all of Birmingham, for appellee.

528

full force and effect Uniontown Cotton Oil Co., became and was indebted to the plaintiff in the sum of sixty-seven thousand dollars ($67,000), which indebtedness arose by virtue of a loan made by plaintiff to Uniontown Cotton Oil Co. and is evidenced by a promissory note executed by Uniontown Cotton Oil Co. on the 19th day of June, 1939, a copy of which note is hereto attached, made a part hereof and is marked Exhibit 'B'. Plaintiff further alleges that the said loan was made by plaintiff in consideration of the execution of said guaranty agreement by the defendant and upon the faith and credit thereof.

"Plaintiff alleges that at the time of the execution of the aforementioned agreement and at the time of the execution of Exhibit B to the complaint defendant was a stockholder and director of Uniontown Cotton Oil Co.

"Plaintiff alleges, further, that the said indebtedness is now past due and unpaid and Uniontown Cotton Oil Co. has made default in the payment of same, all of which the plaintiff has notified defendant. Plaintiff alleges that it has made demand upon the defendant to pay the said indebtedness in accordance with the terms of said agreement but the defendant has wholly failed and refused to pay the same, hence this suit."

BOULDIN, Justice.

The main questions on this appeal grow out of giving the affirmative charge, with hypothesis, for plaintiff. The alleged cause of action is aptly stated in the complaint, as amended, and Exhibit A thereto, which read:

"The plaintiff claims of the defendant the sum of sixty-seven thousand dollars ($67,000) with interest thereon from August 1, 1939, for that heretofore on to-wit, the 19th day of August, 1931, the defendant entered into an agreement in writing with the plaintiff by the terms of which the defendant guaranteed to the plaintiff the payment of all debts then or thereafter, while said agreement was in force and effect, owed by Uniontown Cotton Oil Co., of Uniontown, Alabama, to the plaintiff. A true copy of said agreement is attached hereto, made a part hereof and is marked Exhibit 'A'.

"Plaintiff alleges that after the execution of the said agreement and while it was in

"Exhibit 'A'
"Birmingham, Ala.
"19th day of August, 1931

"The undersigned does hereby guarantee to the Birmingham Trust & Savings Company, an Alabama banking corporation, the payment of any and all debts now owing by Uniontown Cotton Oil Co. to said Trust Company, and any and all debts hereafter contracted and any and all renewals of debts now owing or hereafter contracted by Uniontown Cotton Oil Co. to said Trust Company.

"It is understood that this contract of guarantee is made for the purpose of securing to Uniontown Cotton Oil Co. a line of credit with said Trust Company, but that the amount of the credit and the terms and conditions, and the time of the credit are to be as the Trust Company, in its discretion, may deem fit to make.

"It is agreed that the said Trust Company may, in its discretion, at any time, take renewals of any debts or extend the time of payment of any debt at any time

owing to it by Uniontown Cotton Oil Co. without notice to the undersigned, and without in any way impairing or affecting the obligations of the undersigned on this contract of guarantee. It is understood that any and all loans made by the Trust Company to Uniontown Cotton Oil Co. and any and all credit granted by the Trust Company to Uniontown Cotton Oil Co. and any and all renewals of debts owing at any time by Uniontown Cotton Oil Co. to the Trust Company are upon the faith and credit of this guarantee. This guarantee shall extend to all debts contracted or owing by Uniontown Cotton Oil Co. to the Trust Company at any time up to the time that the undersigned gives written notice, in person, to the President of the Trust Company, that the undersigned desires to terminate this contract of guarantee, and the undersigned shall have the right to give this notice at any time. It is agreed in the event that Uniontown Cotton Oil Co. should at any time make default in the payment of any debt owing to said Trust Company when the same becomes due and the said Trust Company does not desire to take a renewal of the same, and Uniontown Cotton Oil Co. does not pay such debt at once, then the undersigned agrees to pay such debt at once, and on failure to do so the said Trust Company may, in its discretion, enforce the collection of such debt out of the undersigned by suit in court, or in any other way provided by law, the same as if such debt were the primary and individual debt of the undersigned, without first seeking to enforce the said debt by suit or otherwise out of Uniontown Cotton Oil Co. or the said Trust Company may, in its discretion, proceed in any manner provided by law for collection of debts against either or both the undersigned and Uniontown Cotton Oil Co. the same as if such debt were primarily and individually the debt of both the undersigned and Uniontown Cotton Oil Co. It is agreed that each and every term, provision and condition of each and every note, or other evidence of debt executed by Uniontown Cotton Oil Co. to said Trust Company shall become a part of this obligation as if fully set out herein and shall be obligatory upon the undersigned as if it were executed by the undersigned as the primary and individual obligation of the undersigned.

"S. T. Whitfield
"Leon Loeb Jr.
"W. H. Tayloe

"Wm. Munford
"W. L. DeSear
"J. F. Glass
"C. P. Johnston".

■ The plea was in short by consent, followed by a list of permissible defenses, among them the following: "10. The debt sued upon is the debt of the Uniontown Cotton Oil Company, a Delaware Corporation, and not the debt of the Uniontown Cotton Oil Company, an Alabama Corporation, whose debts the guaranty was given for."

This was the defense relied upon when demand for payment was made, as disclosed by letter of defendant dated August 7, 1939, saying:

"I wish to call your attention to the fact that the Uniontown Cotton Oil Co. of Alabama and the Uniontown Cotton Oil Co. of Del. were two separate and distinct corporations. On Aug. 19th, 1931, seven directors of the Uniontown Cotton Oil Co. of Ala. signed a paper guaranteeing loans made by the Birmingham Trust to said corporation. All of these loans have been paid in full.

"On Sept. 28th 1931, the Uniontown Cotton Oil Co. of Del. was organized but I don't think any of its directors guaranteed its debts and I know I did not."

Uniontown Cotton Oil Company, an Alabama corporation, had been in business many years prior to 1931. Its business was seasonal; called for operating capital to stock up on cotton seed when available at favorable prices, to be processed and marketed as the season advanced.

Business relations with plaintiff bank began with a line of credit arranged by Dr. Whitfield, the defendant, personally. He was president of the Oil Company and so continued throughout later dealings with the bank.

In the summer of 1931, he initiated negotiations for a line of credit direct to the Oil Company. To that end, and on demand of the bank, the guaranty agreement above was executed by the directors of the company, along with a general collateral agreement by the company.

Contemporaneous with the above negotiations, and prior thereto, the Uniontown Cotton Oil Company was considering the matter of acquiring a Delaware charter with a view to a more favorable tax status. The minutes of the annual stockholders'

meeting several weeks prior to the execution of the guaranty contract recite: "On motion duly seconded, the Board of Directors was authorized to take such steps as are considered necessary to acquire a Delaware Charter with the end in view of transferring assets and liabilities of the Uniontown Cotton Company to said Delaware Corporation and dissolving said Uniontown Cotton Oil Company."

A Delaware charter was obtained some six weeks after the guaranty contract was executed. In effect, as well as intent, there was a mere substitution of a Delaware charter for an Alabama charter, with the proceedings incident to such purpose. The same corporate name was retained, "Uniontown Cotton Oil Company," not "Uniontown Cotton Oil Company of Delaware." The new set-up had the same assets and liabilities, the same stock and stock ownership, the same directors, officers and management, the same business enterprise at the same place. The Oil Company proceeded immediately after arranging a line of credit as per the guaranty contract to obtain loans from the bank; loans pending change of charter, loans following the change of charter during the same season and on through successive seasons, giving notes in the same corporate name, executed by the same authority. No notice was given of any change of charter; no notice of termination of the guaranty in the manner therein provided, nor otherwise.

The Oil Company, opening a checking account with the bank at the beginning of business relations, caused a signature card to be executed by the officers authorized to draw checks on the company's account. These officers were this defendant, as President, and Mr. Glass, as Secretary and General Manager, both directors, signers of the guaranty contract. This card was unchanged, remained with the bank, and was part of the course of business down to the failure of the Oil Company in 1939, the signatories of the card continuing to be president and general manager during the whole period. Just when the bank first learned of the new charter is not without conflict in the evidence. This is immaterial. Certain it is that it was only learned incidentally in the course of business, not in any way implying a change of basis of credit.

The guaranty contract, on its face, was to secure a line of credit for "Uniontown Cotton Oil Company." This is repeated over and over. Nowhere it is identified as an Alabama corporation. The manifest purpose was to put the personal responsibility of the signers, the directors and large beneficial owners of the business, behind the obligations of the corporate entity under their control and management, as a basis of continuing credit. On their part, the guarantors were establishing a line of credit for needed operating capital for their business unit or enterprise to continue in force until terminated in the manner expressly declared in the contract.

A careful study of the contract and course of business shown by the evidence, without conflict, convinces us that both parties considered the guaranty to cover loans to Uniontown Cotton Oil Company, a going concern in which they were directly interested, a corporate entity identified by its name, and without regard to the source of its corporate existence and powers. No other reasonable view, we think, can be taken consistent with good faith on the part of the guarantors. Richardson v. Steuben County, 226 N.Y. 13, 122 N.E. 449; Elliott-Lewis Electric Co., Inc., v. Hausman, 104 Pa. Super. 322, 158 A. 626; Woodcock v. Oxford & Worcestershire Ry. Co., 1 Drewry 521, 61 English Rep. 551.

We see no reason to impute bad faith in these transactions, and need not deal with the question of estoppel. New York American, Inc., v. Hub Advertising Agency, 136 Misc. 596, 240 N.Y.S. 367.

█ It is further argued that the guaranty covered loans only for the current season. The evidence discloses that loans during the season of 1931–32 were paid up some months before further loans were obtained for the next season, and loans from year to year were paid off in like manner, save one year, prior to the final failure and default in 1939. True, under the terms of the guaranty, no liability of the guarantors arose until loans were made by the bank in its discretion, and no liability existed during the interims between payment of existing loans, and obtaining new ones.

This in no way prevented the guaranty operating as a standing engagement, a continuing basis of credit, according to the express terms of the guaranty. These express terms included all loans made at any time until the guaranty was terminated by notice in writing, and provided that notes given for indebtedness should be written into and become a part of the guaranty

contract. These terms are unequivocal, certain, speak for themselves, leaving no room for construction to a contrary intent. If circumstances attending the giving of the guaranty be considered, they disclose a going business, long existing, and to continue indefinitely, in probable need of seasonal operating capital, for which arrangements were being made, not for the present, not for any specified number of years, but until the guarantors should terminate the credit arrangement evidenced by the guaranty in the manner therein specified.

The fact that no loans were made during one season warrants no conclusion that business relations, including basis of credit, were terminated. Contemporary correspondence was to the contrary; disclosed no need for loans for the present, with assurance of continued business when occasion arose.

█ Again it is argued that Dr. Whitfield was personally released from the guaranty upon his sale of his stock, ending his personal interest in the future of the Oil Company. While the guaranty was signed by the then directors, men interested in the enterprise, the stated obligation was not as directors, determinable on their ceasing to be directors, but on definite notice brought home to the bank in writing. Here again, the correspondence at the time discloses Dr. Whitfield continued to be a director, and president; and the evidence discloses he so continued and functioned as a stockholder until the debt here involved was incurred. It cannot be construed in any respect as notice of termination of his guaranty obligation, nor an abandonment of the line of credit there guaranteed. To the contrary, it discloses a desire and purpose to continue the established business relations; and actual borrowing was resumed with all the bases of credit still with the bank. American Steel & Wire Co. v. Richardson, 191 Mich. 549, 158 N.W. 34; Manufacturers' Finance Company v. Rockwell, 278 Mass. 502, 180 N.E. 224.

█ The offer of the bank, after bankruptcy of the principal debtor and default in payment of note, to take the individual note of the guarantors and extend the time for payment, can, in no sense, be taken as an implied admission of nonliability on the guaranty contract. The existence of this obligation could furnish the only reasonable basis for asking the guarantors to give their note. To ask for a live security, rather than hold one past due, is in keeping with good banking as matter of common knowledge.

█ That the bank checked up from time to time on the Oil Company, as a credit risk, and not on the solvency of the guarantors, can support no inference favorable to the defense. Naturally, the financial status of the principal debtor to whom loans were to be made was of first consideration. Other bases of credit were cumulative. The guarantors, directors and officers interested in the management of the Oil Company had a common interest with the bank as regards the company's business success, etc. Nor was there occasion to remind the guarantors of the existence and continuance of the basis of credit embodied in their contract until occasion arose to call upon them to meet their obligation. Granting one is not presumed to never forget, forgetting one's contract obligations does not relieve him therefrom.

It was not essential that the officers of the bank, when making loans from time to time have in mind, or look up, the bases of credit in detail. A loan upon established bases of credit, whatever be the details, was a loan in reliance upon the actual prearranged bases of credit, including the guaranty here sued upon.

█ What we have written will suffice to indicate there was no reversible error in rulings upon evidence to which assignments of error are directed. In most cases, the evidence called for was otherwise in, and not controverted, or was given in response to the questions asked, and never excluded. No evidence was received over objection, nor denied to defendant, which would alter the result.

We find no error in giving the affirmative charge with hypothesis. The judgment for plaintiff for the sum sued for, less credits not in dispute, must be affirmed.

Affirmed.

GARDNER, C. J., and FOSTER, LIVINGSTON, and LAWSON, JJ., concur.