COOK, Justice
(dissenting).
The plaintiffs, Larry and Susan Harris, sued Aronov Realty Company, Inc., and Aro-nov Realty Brokerage, Inc., alleging fraud. In 1993, a part of Aronov Realty Company, Inc., became Aronov Realty Brokerage, Inc. The defendants will be referred to collectively as “Aronov.” The Harrises appeal from a judgment entered on a jury verdict for Aro-nov. Because I believe the evidence requires a holding that the trial court abused its discretion by admitting into evidence an inadmissible offer of compromise, I respectfully dissent.
In 1973, Aronov purchased a large tract of land in Prattville, and, for a number of years, it leased the property to farmers. At trial, two farmers testified that they had seen evidence of a cemetery on a portion of the land.
In late 1992, Aronov began developing the Pecan Ridge subdivision on the land. John Boutwell, a farmer who previously had leased the land, saw the work being done and tried to find the cemetery but discovered that the tombstones had been removed. He mentioned this to his lawyer, who told the mayor of Prattville.
In August 1993, Larry Harris and his wife Susan Harris purchased a lot in Pecan Ridge. Construction of the Harrises’ home began during the first week of September 1993.
In October 1993, the City of Prattville contacted Boutwell to confirm the information about gravesites on the land that was being developed as Pecan Ridge. A representative from the mayor’s office could not locate tombstones on his first visit to the site; however, on a second visit, he found a block that appeared to have been a “footstone” marker for a grave. A city employee photo *611 graphed the stone, and the information was given to the city attorney. The city attorney contacted Joe Watkins, an employee of Aro-nov.
In November 1993, the City stopped the grading in progress on the lot adjacent to the Harrises’ lot. The City told the contractor it was a violation of Ala.Code 1975, § 13A-7-23.1, to desecrate or destroy a cemetery. The contractor notified Aronov. Aronov notified its in-house accountant, so that the lot could be removed from the tax rolls and Aronov could avoid paying taxes on the property (cemeteries are not subject to ad valo-rem taxation). Aronov also returned the deposit a builder had made on the lot adjacent to the Harrises’ lot.
The Harrises’ home was completed in November 1993, and they closed the loan on their home on November 17. Before the closing on the house, Aronov did not tell the Harrises that a cemetery might be located near their lot.
On December 1, 1993, at the direction of Aronov, a “ground penetrating radar” (“GPR”) test was performed on the lot adjacent to the Harrises’ lot. The test confirmed the presence of anomalies (inconsistencies with undisturbed soil) that indicated the possibility of gravesites. On December 26, 1993, Aronov placed a series of public notices in the Prattville Progress newspaper announcing that if graves were found, they would be opened and the contents removed. The Har-rises testified that they did not know about the public notices.
In early January 1994, the Harrises’ builder came to their home to make a repair. He told Mrs. Harris he had heard about the possibility that there were gravesites on the adjacent lot. After tests conducted on February 8, 1994, confirmed the presence of gravesites on the Harrises’ lot as well, an Aronov representative went to the Harrises’ home and told them about the gravesites. The Aronov representative testified that they discussed possible solutions, and that the Harrises indicated that they had no problem with Aronov’s proposals for correcting the situation and told him they “would think about it.”
In August 1994, the Harrises sued Aronov for damages based on fraud, specifically fraudulent suppression and active concealment. The Harrises claimed that Aronov had known about the gravesites before the Harrises closed on their loan on November 17, 1993, but failed to disclose, or actively concealed, this information, which they claimed would have been material to their decision to close the loan. According to the Harrises, if they had been told about the cemetery, they would not have closed on their loan. The Harrises claimed that their home was valueless and that they had suffered extreme mental anguish.
In November 1994, Aronov held a “town meeting” in Prattville and at that meeting presented the results of the GPR studies. In 1995, the Harrises commissioned an independent GPR study of their lot, and the geophysicist found evidence of gravesites. In July 1995, Aronov obtained a court order that allowed excavation of a limited area of the Harrises’ lot; the excavation confirmed one gravesite.
On September 29, 1995, Aronov’s lawyer wrote a letter to one of the attorneys for the Harrises, offering to purchase the Harrises’ home:
“As you know, Aronov Realty Brokerage, Inc., is a well established and well respected company in the Montgomery-Prattville area. Its good reputation is important to it. Even though Aronov does not agree with the contentions of your lawsuit relating to Aronov’s knowledge of gravesites on the Harris property or with other claims your client has made, we are willing to facilitate the Harrises’ move from property with which they are inargu-ably unhappy. Specifically, we propose the following:
“1. The fair market value of the home should be determined by an appraiser agreed upon by you and me. The appraiser will be instructed to appraise the home in its present condition without attempting to factor in a discount for the existence of possible gravesites. In other words, the appraiser will be instructed to appraise the property as if no gravesites are on it. If we cannot agree on an appraiser, then I *612 propose we each select an appraiser and then allow those two appraisers to pick a third appraiser to perform the work.
“2. As soon as the appraised value is determined, Aronov Realty Brokerage will purchase the Harrises’ house at appraised value.
“3. In addition, Aronov Realty Brokerage is willing to pay the Harrises’ reasonable moving expenses to another house within a 25-mile radius of their existing home.
“Randy, please understand that there are no conditions on this offer. Your clients may accept this offer to purchase without dismissal of their case. The intent of our offer is to allow the Harrises to move off of property with which they are not happy in a way which will not cause them any economic loss. Further, we expect that such a move will end any claims for mental anguish after the time of their move.
“Of course, because this is not an offer of settlement in this case, this letter or this offer will be admissible at trial on the issue of mitigation of damages. We have no problem with any jury knowing about our offer to purchase this property and [to] pay moving expenses. If you have problems with the jury knowing this information, please advise me of that fact prior to consummation of the purchase of the Har-rises’ property.”
On October 13,1995, Aronov filed a motion in limine, asking the trial court to admit this letter into evidence.
On October 20, the Harrises rejected Aro-nov’s offer, by a letter from one of their lawyers. The letter read:
“We are in receipt of Aronov’s offer to purchase the Harrises’ residence. As you know, the Harrises tried to work out an arrangement with Aronov in early 1994 when they found out about the graveyard, wherein Aronov would purchase the Har-rises’ home for enough money to allow them to purchase or build a house substantially similar to the home they had just built. Aronov refused to act in good faith at that time, even though they had initially deceived the Harrises. Now, over a year later, after the deception has been uncovered, Aronov wants to buy the house to ‘end any claims for mental anguish.’ If this were indeed the intent of Aronov, the offer should have been made long ago. The purchase of the Harrises’ home certainly would not end the mental anguish they have suffered from the knowledge that Aronov knowingly concealed from them that their first custom-built house was built in a graveyard.
“Due to the bad faith actions of Aronov, the Harrises have incurred substantial attorney fees and expenses and cannot afford to purchase a new home with the money offered. In addition, if the Harris-es were to accept the offer, they would have to move more than once, which would be very disruptive to their children. Therefore, the Harrises must decline the offer made by Aronov to purchase their home in partial settlement of this case.”
Evidence at trial established that the original appraisal of the Harrises’ home in September 1993 (a pre-completion appraisal) was $98,000. The Harrises’ contract with their builder called for them to pay $101,000. A real estate appraiser engaged by the Harris-es’ lawyers testified that, as of November 1995, the value of the Harrises’ home and lot, without the gravesites, would be $102,500, but that with the gravesites the value was $40,000. The Harrises claimed that the presence of the gravesites made their house and lot valueless.
Aronov filed a second motion in limine which began: “This court has tentatively ruled that the letter [to the Harrises’] counsel should not be admitted at trial [, on the basis that it was] an ‘offer in compromise.’ ” In this second motion, Aronov, claiming that it had made a “firm offer” to purchase the Harrises’ property, asked the trial court to reverse its “tentative” ruling.
On October 31,1995, Aronov filed a motion to allow inspection of the property. An excavation of the identified gravesites yielded human remains, but the remains were rein-terred into the gravesite.
In August 1996, the Harrises filed a motion in limine objecting to the admission of, *613 or reference to, any evidence relating to “all offers made by [Aronov] to purchase the [Harrises’] home.” On the day of trial, the trial court entered an order granting Aro-nov’s second motion, stating that it would admit into evidence the letter from Aronov’s lawyer to the Harrises.
The jury returned a verdict for Aronov, and the trial court denied the Harrises’ motion for a new trial. The trial court entered a judgment for Aronov, and the Harrises appealed.
The Harrises claim that the trial court abused its discretion by admitting into evidence the letter from Aronov’s lawyer stating Aronov’s offer to purchase the Harrises’ home. The Harrises say the letter was a conditional offer of settlement, with no admission of Aronov’s liability, and therefore was inadmissible; they argue that its admission into evidence was reversible error, citing Super Valu Stores, Inc. v. Peterson, 506 So.2d 317 (Ala.1987), and Rule 408, Ala. R. Evid.
Rule 408 of the Alabama Rules of Evidence, and the advisory committee’s notes thereon, read, in pertinent part:
“Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.... This rule ... does not require exclusion when the evidence is offered for another purpose....
“Advisory Committee’s Notes
“By excluding evidence of offers to compromise, this rule promotes the policy of encouraging parties to settle their disputes .... Such a general exclusionary rule, regarding offers of compromise, has long been recognized in Alabama. See, e.g., Glaze v. Glaze, 477 So.2d 435 (Ala.Civ.App.1985); Whitfield v. Birmingham, Trust & Sav. Co., 244 Ala. 526, 14 So.2d 137 (1943). See also C. Gamble, McElroy’s Alabama Evidence § 188.01(1) (4th ed.1991)_
“Rule 408 is in no way intended to impede the preexisting broad interpretation that Alabama courts have applied to the rule excluding evidence of compromise negotiations. In particular, evidence of a party’s offer to settle will continue to be inadmissible when offered in that party’s own behalf as going to show the validity and strength of the offeror’s own case and the corresponding invalidity of the offer-ee’s case. See, e.g., Kelly v. Brooks, 25 Ala. 523 (1854) (excluding evidence of plaintiffs own offer to submit dispute to a panel); Glaze v. Glaze, 477 So.2d 435 (Ala.Civ.App.1985) (excluding evidence of defendant’s self-serving offer of settlement). Overall, the advisory committee expects that the Supreme Court of Alabama will continue its generous protection, as privileged and inadmissible, of negotiations looking to compromise of controversies. See Super Valu Stores, Inc. v. Peterson, 506 So.2d 317 (Ala.1987). This in no way detracts from the concept, otherwise embodied in Rule 408, that offers of compromise may be admissible for purposes not precluded in the rule. This ‘other purpose’ doctrine, however, should be applied by the courts in a way that does not defeat the underlying policy of the rule. See J. Weinstein & M. Berger, 2 Weinstein’s Evidence ¶ 408[4], at 408-31 (1992).”
(Emphasis added.)
Was Aronov’s letter to the Harrises an offer of settlement or compromise, or was it, as Aronov contends, admissible under an exception to the prohibition expressed in Rule 408?
Aronov argues that the September 29 letter was admissible pursuant to the “another purpose” exception to Rule 408: to show that the Harrises failed to mitigate their damages when they refused to accept Aronov’s offer to purchase the Harrises’ home and to pay their moving expenses. The “another purpose” exception would recognize particular evidence as an offer of compromise but would nonetheless allow the evidence to be admitted for some purpose other than proving liability, subject to certain safeguards, as de *614 tailed in the Advisory Committee’s notes to Rule 408.
The trial court charged the jury as follows regarding a plaintiffs duty to mitigate damages:
“Now, as I told you earlier, the [Harris-es] have the duty to mitigate their damages. That was the one purpose for which that letter was admitted that was written on September 29th of 1995.... It doesn’t go to either the question of the validity or the amount of their claims in this case. On the other hand, it is not an admission by [Aronov] of any liability in this case....
“The law with regard to mitigation is that it is the duty of the [Harrises] to exercise ordinary care to reduce or to mitigate their damages. They are bound to exercise such care as a reasonable, prudent person would exercise under like circumstances to mitigate their damages. They can recover only such damages as would have been sustained had such care been exercised. If you can find that the [Har-rises] could have taken certain steps to reduce or eliminate their damage, then you must limit their recovery to the damages they would have sustained had they taken these steps. But whether a party has sufficiently mitigated his damages, of course, is a question for you to resolve from the evidence in this case.
“Generally, ... an injured party is required to mitigate his damages in a reasonable manner consistent with what an ordinary prudent person would do in similar circumstances. If mitigation would impose upon the injured party undue risk, expense, humiliation, or indignity, however, the duty to mitigate will not attach.”
In denying the Harrises’ motion for a new trial, the trial court held:
“[T]he letter in question was an unconditional offer to purchase the Harrises’ house and the lot, and the offer was not conditioned on the Harrises’ terminating the action. The offer was clearly admissible in accordance with the last sentence of Rule 408 [of the Alabama Rules of Evidence], and it was admitted based on that authority....”
With regard to a plaintiffs duty to mitigate damages, this Court has held:
“We begin our analysis by recognizing the long-standing rule that the law imposes upon all parties who seek recompense from another a duty to mitigate their losses or [damage]. It is equally well established that a plaintiff can recover only for that damage or loss that would have been sustained if the plaintiff had exercised such care as a reasonably prudent person would have exercised under like circumstances to mitigate the damage or loss; and whether the plaintiff has sufficiently mitigated the [damage], generally speaking, is a question of fact.
“Stated otherwise, the injured or damaged party is legally bound to lessen the recoverable damages so far as is practicable by the use of ordinary care and diligence. Thus, the rule of mitigation requires a party suffering injury, damage, or loss to take reasonable steps to reduce it.
“The rule of mitigation finds its application only in the context of evidence from which the factfinder may reasonably infer that the claimant rejected a reasonable course of action that an ordinarily prudent person would have taken under similar circumstances to minimize the injury, damage, or loss. In other words, the party seeking to invoke the rule must meet a threshold ‘sufficiency of the evidence’ test, lest the issue be resolved against the mov-ant as a matter of law. The rule does not apply where the injured party, in an effort to minimize the loss, would be required to incur considerable personal risk or expense with but a slight chance of an alternative recovery.
“... The law of mitigation does not impose upon the damaged party the duty to expend good money to chase the bad; nor does it impose an absolute duty to first exhaust all other remedies.”
Avco Financial Services, Inc. v. Ramsey, 631 So.2d 940, 942-43 (Ala.1994) (citations omitted). “If mitigation would impose upon the injured party undue risk, expense, humiliation, or indignity, however, the duty to mitigate will not attach.” Carnival Cruise *615 Lines, Inc. v. Goodin, 535 So.2d 98, 103 (Ala.1988).
Applying the standard established by Avco Financial Services and Carnival Cruise Lines, I must conclude that the Harrises did not act unreasonably in refusing the offer contained in Aronov’s letter to them. The appraised value of the house at the time of Aronov’s offer had not changed by the time of trial, and there is no evidence that in refusing to accept Aronov’s offer the Harris-es were holding out for a better offer.
The jury was allowed to know that Aronov told the Harrises it expected that its purchase of the Harrises’ home would “end any claims for mental anguish after the time of their move.” The evidence, however, shows that Aronov knew about the gravesites as early as November 1993 (before the Harrises closed on their loan) and, the Harrises contend that they attempted to work with Aro-nov toward in a solution in 1994 but that Aronov failed to act in good faith and refused to accommodate thé Harrises’ attempts. Ar-onov’s statement that its purchase of the Harrises’ home would end any claims for mental anguish after they moved was nothing more than a statement of Aronov’s position in the case. There was no evidence to eliminate any other factual basis for mental anguish after the proposed move, such as expecting the Harrises to be able to erase the experience and disappointment connected with the purchase of their first custom-built home simply by selling the house and moving to another location.
I cannot agree with Aronov’s contention that its September 29 letter comes within the “another purpose” exception to Rule 408 as evidence that the Harrises failed to mitigate their damages. Unquestionably, the Harris-es’ duty to mitigate would be tied to reducing or lessening their loss or damage through the use of ordinary care and diligence. There was no evidence that the value of the house had increased between the date of Aronov’s offer to purchase and the date of the trial. If the duty to mitigate does not attach (Carnival Cruise Lines, Inc. v. Goodin, supra), then there is no field of operation for evidence offered to show a failure to mitigate; therefore, the “another purpose” exception to Rule 408 is not applicable to this case and is not a proper ground for admitting the September 29 letter into evidence.
I note, too, that if Aronov’s asserted purpose of showing a failure to mitigate was a proper basis for offering the letter into evidence, then the trial court could have stricken the inadmissible portions of the letter and admitted only that portion stating the offer to purchase. My review of the entire, letter causes me to conclude, however, that it was a self-serving attempt by Aronov to prejudice the jury in Aronov’s favor and against the Harrises.
I recognize the validity of, as well as the need for, the exception to Rule 408. However, I agree with the statement of the advisory committee that the “another purpose” exception to Rule 408 “should be applied by the courts in a way that does not defeat the underlying policy of the rule.” Indeed, as the advisory committee pointed out, “[i]n particular, evidence of a party’s offer to settle will continue to be inadmissible when offered in that party’s own behalf as going to show the validity and strength of the offer- or’s own case and the corresponding invalidity of the offeree’s case.” (Emphasis added.)
Because the Harrises had no duty to mitigate by accepting Aronov’s offer to purchase their home, under the facts presented here I would hold that the trial court abused its discretion by allowing into evidence a letter whose probative value as to mitigation was substantially outweighed by its prejudicial effect. Rule 403, Alabama Rules of Evidence; Dempsey v. Phelps, 700 So.2d 1340 (Ala.1997).
Aronov argues that the trial court’s charge limited the jury’s consideration of the letter to the issue of damages in case it found Aronov liable. Therefore, says Aronov, because the jury found in its favor on the issue of liability, the jury did not consider the matters contained in the September 29 letter and its admission was harmless error if it was error at all. This argument is without merit. Aronov’s lawyer carefully worded the letter, in the belief that it would be before the jury at trial, to strengthen Aronov’s position and to diminish the Harrises’ position; as I have observed earlier, this is conduct *616 that “in particular” is not allowed by Rule 408 and does not come within any exception to that rule.
Although it is impossible to know why the jury did not award the Harrises any damages, even with evidence that Aronov had been willing at one time to pay the appraised value of the residence, an explanation rests in the probability of prejudice that would have resulted from the admission of Aronov’s letter into evidence. The jury could have reasonably inferred from the Harrises’ rejecting the offer stated in Aronov’s letter that the Harrises were not acting in good faith; and such an inference would have shifted the jury’s focus away from determining liability on the legal issues presented.
Finally, I note that the decisions of this Court on the issue of admissibility of a defendant’s offer of settlement or compromise would support a reversal in this case.
In Super Valu Stores, Inc. v. Peterson, supra, this Court affirmed the exclusion of written communications between the parties that contained statements of offers, demands, and withdrawals of offers, which were integral parts of the parties’ ongoing settlement negotiations. We held that admission of the disputed documents into evidence would defeat the stated public policy of encouraging settlements.
In Cochran v. Watson, 628 So.2d 407 (Ala.1993), we acknowledged the general rule that offers of compromise are inadmissible, but held that the payments made to the plaintiff were “inextricable from ... evidence that [the defendants] admitted liability and, therefore, were making payments in light of that admission.” 628 So.2d at 408.
In Northwestern Mutual Life Insurance Co. v. Sheridan, 630 So.2d 384 (Ala.1993), we approved the trial court’s excluding from evidence a portion of a letter from Northwestern to the Sheridans. Northwestern claimed that the letter contained only unconditional promises; however, we held:
“On its face, the letter is conditional. Paragraphs [c] and [d] begin: ‘We agree to reimburse you_’ (Emphasis added [in Sheridan.]) Even more significantly, paragraph [d] states: ‘If this proposal for resolving the situation meets with your approval, please inform us in uniting.’ (Emphasis added [in Sheridan.]) These statements are incompatible with the concept of a unilateral, unconditional promise. They are consistent, however, with an offer of compromise or settlement.”
630 So.2d at 388-89.
In Lowery v. Ward, 662 So.2d 224 (Ala.1995), and Ex parte Proactive Insurance Corp., 668 So.2d 512 (Ala.1995), this Court concluded that certain documents were inadmissible because they contained no evidence from which one could reasonably infer that the defendants had made admissions of liability. However, in Norfolk Southern R.R. v. Thompson, 679 So.2d 689 (Ala.1996), we held that the trial court properly admitted evidence of the railroad’s offers to pay the decedent’s funeral expenses, because the railroad had previously admitted that it was responsible for the accident in which the decedent was killed.
The letter from Aronov’s lawyer stated that Aronov did not agree with the Harrises’ contentions relating to Aronov’s knowledge of the gravesites, but that Aronov was willing to facilitate the Harrises’ move from the property. This is a classic offer of compromise: no admission of liability by the defendant, but a statement of the defendant’s willingness to seek a compromise with regard to the plaintiffs claim of fraud. Although the letter further stated that the Harrises could accept the offer to purchase without dismissing their case, it is clear that Aronov had as its purpose the ability to offer the letter at trial to diminish the strength of the Harrises’ case and to strengthen its own case. While the offer to purchase the residence would have been admissible had it contained an admission of liability by Aronov, there was no such admission here.
“Unconditional” is defined as “not conditional, limited, or conditioned; made without conditions; absolute; unreserved.” Webster’s New International Dictionary, Unabridged (2d ed.1953, G & C Merrimam Co.). Aronov’s letter offering to purchase the Har-rises’ house and lot, although postured as unconditional, addressed only part of the damages being sought in this fraud case; it *617 did not constitute an unconditional admission of liability. To the contrary, the letter specifically stated that Aronov did not agree with the Harrises’ contentions.
Based on the correspondence between the Harrises and Aronov, I am convinced that Aronov’s letter was, in fact, an offer of partial settlement of the Harrises’ claims against it. Indeed, the trial court’s post-judgment ruling that Aronov’s letter was admitted into evidence as an exception to Rule 408 was necessarily the result of that court’s first having concluded that, under the general principles of Rule 408, the letter would have been an inadmissible offer of compromise. Clearly, Aronov’s. September 29, 1995, letter was an inadmissible offer of compromise to the Harrises, and its admission into evidence was reversible error. Therefore, I dissent.
ALMON and SHORES, JJ., concur.