Bend Millwork Systems, Inc., and Pozzi Window Company ("Bend and Pozzi") sued James L. Sharer, Edgar C. Cost, and Jeffrey W. Floyd, seeking enforcement of a guaranty agreement that Sharer, Cost, and Floyd had executed in favor of Bend and Pozzi on behalf of Sharer Sash and Door, Inc. ("Sash and Door"). Bend and Pozzi are Oregon corporations engaged in the manufacture and wholesale distribution of specialty windows and doors. Sash and Door is an Alabama corporation involved in the retail sale of building supply products. Sash and Door had entered into a distributorship agreement with Bend and Pozzi. At the time the guaranty was executed, Sharer, Cost, and Floyd owned all of Sash and Door's stock.
Bend and Pozzi's complaint alleged that Sharer, Cost, and Floyd had executed a continuing guaranty agreement in which they unconditionally guaranteed to pay any outstanding indebtedness owed by Sash and Door to Bend and Pozzi in the event Sash and Door defaulted on its obligations. Bend and Pozzi further alleged that they shipped goods to Sash and Door after the guaranty agreement was executed, and that Sash and Door had failed and refused to pay the amount owed for the goods.
In response to Bend and Pozzi's complaint, Cost and Floyd answered with a general denial. Although Sharer also answered the complaint with a general denial, he further alleged that he was not liable on the guaranty because no sales were made by Bend and Pozzi until after he had sold his interest in Sash and Door to Cost and Floyd and he alleged that Bend and Pozzi had knowledge before the shipments were *Page 225 
made that he was no longer affiliated with Sash and Door.
Sharer answered Bend and Pozzi's complaint, and he also cross-claimed against Cost and Floyd, alleging that they had breached an agreement to use their best efforts to release Sharer from the guaranty and that they had used the guaranty to fraudulently obtain materials and supplies from Bend and Pozzi. Cost and Floyd also cross-claimed against Sharer, alleging that he had misrepresented to them the value of the shares in Sash and Door that they had purchased from him after the guaranty was executed.
Bend and Pozzi moved for a summary judgment against Sharer, Cost, and Floyd. After a hearing on the motion, the court entered a summary judgment against Cost and Floyd. With regard to Sharer, however, the motion was continued for further consideration. Thereafter, Sharer moved for a summary judgment against Bend and Pozzi, alleging that neither Bend nor Pozzi was qualified to do business in Alabama and arguing, therefore, that they could not seek enforcement of the guaranty agreement in Alabama courts. After a hearing on the summary judgment motions, the court denied Sharer's motion and entered a summary judgment for Bend and Pozzi. The trial court then entered an order pursuant to Rule 54(b), A.R.Civ.P., making Bend and Pozzi's summary judgment against Sharer a final judgment, and Sharer appealed. The two cross-claims are still pending in the trial court.
The issues properly before this Court on this appeal are: 1) whether Bend and Pozzi properly supported their summary judgment motion as to each element of their cause of action so as to show that they were entitled to recover on the guaranty agreement; 2) whether Sharer effectively revoked the guaranty prior to Bend and Pozzi's shipment of goods to Sash and Door; and 3) whether Bend and Pozzi's activities in doing business in Alabama were of such a nature as to require that they qualify to do business in this State.[1]
Initially we note that a motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P.; Southern Guar. Ins. Co. v.First Alabama Bank, 540 So.2d 732 (Ala. 1989). The burden is, therefore, upon the moving party to clearly show that there is no material fact in dispute, and all reasonable inferences from the evidence are to be viewed most favorably to the nonmovant.Southern Guar. Ins. Co., supra.
Rule 56 is read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794 (Ala. 1989). In order to defeat a properly supported motion for summary judgment, the nonmovant must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
Sharer initially argues on appeal that the summary judgment for Bend and Pozzi was improper because, he says, Bend and Pozzi failed to properly support their summary judgment motion as to each essential element for recovery on a guaranty. Specifically, Sharer, citing Delro Industries, Inc. v. Evans,514 So.2d 976 (Ala. 1987), argues that Bend and Pozzi failed to prove that Sharer had been given notice of Sash and Door's default on the debt underlying the guaranty.
In Delro Industries we stated:
 "Every suit on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment *Page 226 
of the amount due from the guarantor under the terms of the guaranty. However, to recover under a conditional guaranty or continuing guaranty, an additional element, notice to the guarantor of the debtor's default, must be proved."
514 So.2d at 979. (Citations omitted.) The guaranty agreement in Delro Industries and that in the instant case were both continuing guaranty agreements. Furthermore, the holder of the guaranty in Delro Industries, as in the present case, failed to present any evidence that notice of a default on the debt underlying the guaranty was given to the guarantor. Because of the lack of proof on the notice element in Delro Industries, this Court affirmed the judgment that had been entered against the holder of the guaranty. However, the present case, wherein a summary judgment has been entered for the holders of the guaranty, Bend and Pozzi, is distinguishable from DelroIndustries in one decisive respect: the guaranty agreement at issue in this case contains a waiver of notice of nonperformance on the underlying debt.
The guaranty agreement Sharer executed provides in pertinent part:
 "We waive, in connection with the indebtedness and with our obligation under this Guaranty, all presentments, demands for performance, notices of non-performance, protests, notices of protest, notices of dishonor and notices of acceptance of this Guaranty and of the existence, creation or incurring of any new or additional indebtedness."
(Emphasis supplied.) The language of the guaranty is controlling in determining whether the holder of the guaranty is under a duty to notify the guarantor of a default by the principal, and notice need not be given when the terms of the guaranty expressly dispense with the need for it. 38 C.J.S.Guaranty, § 63 (1943). Because Sharer waived his right to notice of Sash and Door's nonperformance on the underlying contract, we hold that Bend and Pozzi were not required to prove that they gave Sharer such notice. The record further reveals that Bend and Pozzi properly supported their summary judgment motion as to the other elements of their action on the guaranty agreement, i.e., existence of the guaranty contract, Sash and Door's default on the underlying contract, and nonpayment of the amount due from Sharer under the terms of the guaranty. Specifically, Bend and Pozzi submitted a copy of the guaranty agreement and the affidavit of their vice president of finance, Donald B. Young. In response to Bend and Pozzi's summary judgment motion, Sharer presented nothing that refuted any of the proof of the material elements of Bend and Pozzi's cause of action. Therefore, we conclude that Bend and Pozzi properly supported their summary judgment motion as to each element of their cause of action against Sharer, thereby shifting to Sharer the burden of presenting substantial evidence creating a genuine issue of material fact. See West v.Founders Life Assurance Co. of Florida, supra.
In response to Bend and Pozzi's summary judgment motion, Sharer argued that he should not be held liable on the guaranty because, he says, Bend and Pozzi had actual notice, before they shipped goods to Sash and Door, that Sharer was no longer affiliated with Sash and Door. Therefore, the second issue raised on this appeal is whether Sharer effectively revoked the guaranty before Bend and Pozzi shipped goods to Sash and Door.
In his affidavit, Sharer stated that on April 27, 1990, he sold his stock in Sash and Door to Cost and Floyd and that as a part of that transaction Cost and Floyd were to notify all of Sash and Door's suppliers that he was no longer connected with the company and that any personal guaranties previously issued by him on behalf the company were no longer in effect. Sharer also stated that Mark Pendleton, Bend and Pozzi's marketing representative who handled Sash and Door's account, had actual knowledge of the fact that Sharer was no longer affiliated with Sash and Door before Bend and Pozzi began shipping goods to Sash and Door. However, even assuming Sharer's statements to be uncontroverted, and they were not, we conclude that Sharer was still obligated under the guaranty *Page 227 
when Bend and Pozzi shipped goods to Sash and Door.
The guaranty agreement Sharer executed for Sash and Door contains the following provision relating to revocation: "this Guaranty shall not apply to any indebtedness created after actual receipt by you of a written notice from any of us of its revocation as to future transactions." Sharer does not allege that he ever gave Bend and Pozzi written notice that he was no longer affiliated with Sash and Door and that he was revoking the guaranty that he had executed on Sash and Door's behalf; rather, the thrust of Sharer's argument is that written notice was not required because Bend and Pozzi had actual knowledge that he was no longer affiliated with Sash and Door.
In Bledsoe v. Cargill, Inc., 452 So.2d 1334 (Ala.Civ.App. 1984), a shareholder signed an agreement guaranteeing to Cargill the payment of the debts of a company in which he was a shareholder. Soon after the shareholder sold his stock in the company on whose behalf he had executed the guaranty, Cargill notified the shareholder that it was seeking performance on the guaranty. The shareholder argued that he was no longer liable on the guaranty because he had sold his shares in the company. However, the guaranty agreement provided that the agreement would "remain in full force and effect until the delivery to Cargill of a notice in writing signed by [the shareholder] terminating the said guarantee." 452 So.2d at 1336. The Court of Civil Appeals concluded, therefore, that since the agreement was a continuing guaranty, the shareholder was bound by its terms until he gave written notice of revocation.
A second case we find instructive in deciding this issue isWhitfield v. Birmingham Trust Savings Co., 244 Ala. 526,14 So.2d 137 (1943). In Whitfield, a corporate director and shareholder signed a guaranty of a corporation's debts to a bank. The guaranty provided that it would remain in effect until the guarantor gave written notice to the president of the bank. After executing the guaranty, the guarantor sold his stock in the corporation, but he never gave the bank written notice of the transaction. The Court held that the guarantor was not personally released from the guaranty simply by the sale of his stock.
In the present case, the guaranty agreement Sharer executed clearly provided that the only way to terminate the guaranty was to provide notice of revocation in writing to Bend and Pozzi. Because Bend and Pozzi did not receive written notice of a revocation by Sharer, we hold that Sharer was still obligated on the guaranty agreement when Bend and Pozzi shipped goods to Sash and Door.
The third issue is whether Bend and Pozzi's business activities in Alabama were of such a nature so as to require that they qualify to do business in Alabama pursuant to the provisions of §§ 10-2A-247 and 40-14-4, Ala. Code 1975, and Art. XII, § 232, Ala. Const. 1901. In his motion for summary judgment, Sharer alleged that Bend and Pozzi were foreign corporations that had not qualified to do business in Alabama and that Bend and Pozzi, therefore, could not maintain an action against him in Alabama courts for performance on the guaranty agreement.
In support of his allegations, Sharer submitted: 1) certificates from the secretary of state of the State of Alabama indicating that neither Bend nor Pozzi had registered with that office; 2) an affidavit from Sash and Door employee James W. Pair; 3) Sharer's own affidavit in opposition to Bend and Pozzi's summary judgment motion; and 4) Sharer's own affidavit in support of his summary judgment motion. The only information regarding the extent of Bend and Pozzi's business activities in Alabama provided in Pair's affidavit is the statement that Bend and Pozzi's sales representative, Mark Pendleton, called on Sash and Door "regularly."
In his affidavit in opposition to Bend and Pozzi's summary judgment motion, Sharer made the following statement regarding the extent of Pendleton's presence in Alabama:
 "Mr. Pendleton is far more than a solicitor or order taker for Bend Millwork and *Page 228 
Pozzi Window. His duties include close liaison with his companies' distributors for the purpose of education as to their products, trouble-shooting, preparation of architectural specifications, dealing directly with distributors' customers to solve problems and acquaint them with the products, holding of joint sales meetings with the sales forces of the distributors, and the like. In every sense of the word, he represents Bend and Pozzi in this area, and at all times pertinent hereto, was the person . . . with which [Sash and Door] was expected to deal."
In his affidavit in support of his summary judgment motion, Sharer further stated:
 "All of the business conducted by [Sash and Door] with the plaintiffs was closely coordinated with Mark Pendleton who was the plaintiffs' factory representative for Alabama. When the companies started doing business together, Mr. Pendleton organized an effort to acquaint all of [Sash and Door's] customers with the fact that it was now a distributor for the plaintiffs. This involved . . . numerous visits by Mr. Pendleton, with representatives of [Sash and Door]. . . .
 "Mr. Pendleton's function was to acquaint the personnel of [Sash and Door] with plaintiffs' very large catalog of products and catalog of specifications. Frankly, it would be impossible for anyone with [Sash and Door] to have sufficient familiarity with these very large catalogs to do business as plaintiffs' distributor successfully without his assistance. I have already pointed out that his function included working closely with architects and owners in the framing of specifications, the solving of problems involving the products, and how the products of plaintiffs could best be used in any given project. I know for a fact that he made numerous trips to the [Sash and Door] facility in order to accomplish these purposes.
 "At the time the arrangement between [Sash and Door] and the plaintiffs was made, it was contemplated by all concerned that the activities of [Sash and Door] on plaintiffs' behalf would be within the State of Alabama. If [Sash and Door] had been left to place orders with the plaintiffs simply using plaintiffs' catalogs, it is unlikely that any business would have ever been done by [Sash and Door] as a distributor for plaintiffs in this area. The actual operation involved representatives of [Sash and Door] working with Mr. Pendleton within the State of Alabama, thus resulting in jobs being sold, orders being placed, and then products being shipped in."
In opposition to Sharer's summary judgment motion, Bend and Pozzi presented Pendleton's affidavit. Pendleton indicated that he serves as a representative for Bend and Pozzi in the eastern United States and that his office is located in Virginia. He stated that the principal place of business, the corporate offices, and the manufacturing facilities for Bend and Pozzi are located in Bend, Oregon. He further stated:
 "6. My job with Pozzi is to locate companies in the eastern United States in the states that I cover who are interested in selling Pozzi products under a distributorship agreement. My job is to sell the Pozzi products to the distributor who, in turn, sells these products to its customer base. I am involved in the training of distributors' salespeople in product knowledge of Pozzi products, coordinate marketing efforts between the distributor and our marketing department in Bend, Oregon and am involved in the pricing of products.
 "7. I do not have nor have I ever had an office in the State of Alabama. I travel to Alabama approximately once every six to eight weeks. While in Alabama, I stay there a couple of days to go over sales with distributor management and, in some cases, will make sales calls with distributor salespeople.
 "8. My job functions are identical in numerous other states where I sell products to distributors who, in turn, sell them to their customer base. I engage in the same training in product information, pricing and coordinate marketing efforts between the factor in Bend, Oregon and the local distributors. *Page 229 
 "9. The local distributorships that I deal with in Alabama and the southeastern United States are all owned by people, entities or companies which have no connection with Pozzi Window Company or Bend Millwork Systems, Inc., except for an agreement to act as a distributor.
 "10. All Pozzi and Bend products are manufactured in Bend, Oregon and are shipped to all points in the United States. I am personally involved in the sale and distribution of these products to various states in the eastern United States, including Alabama and the southeast.
 "11. Other than sales of Pozzi and Bend products through recognized distributors, Pozzi and Bend Millwork have engaged in no activity in the State of Alabama."
Bend and Pozzi argue on appeal, as they did in the trial court, that they are not required to qualify to do business in Alabama under the provisions of § 10-2A-247, because, they say, they are engaged in interstate commerce, as opposed to intrastate commerce.
Section 10-2A-247 provides that all contracts or agreements made or entered into in this state by foreign corporations that have not obtained a certificate of authority to transact business in this state will be held void if the foreign corporation files an action to enforce them. Section 40-14-4
contains a similarly worded provision, as does Art. XII, § 232, of the Alabama Constitution. However, laws barring a corporation not qualified to do business in Alabama from enforcing its contracts in the courts of this state apply only when the business conducted in this state by the nonqualified corporation is intrastate in nature. Wallace Const. Co. v.Industrial Boiler Co., 470 So.2d 1151 (Ala. 1985). Because of the Commerce Clause of the United States Constitution, a nonqualified foreign corporation is not barred from enforcing its contracts in Alabama when its activities within this state are incidental to the transaction of interstate business. U.S. Const. Art. 1, § 8, cl. 3; Green Tree Acceptance, Inc. v.Blalock, 525 So.2d 1366 (Ala. 1988). Therefore, the focus of our inquiry is on whether Bend and Pozzi engaged in interstate commerce or in intrastate commerce.
In North Alabama Marine, Inc. v. Sea Ray Boats, Inc.,533 So.2d 598 (Ala. 1988), we considered whether Sea Ray was engaged in interstate or in intrastate commerce under facts very similar to those presented in this appeal. In that case, Sea Ray was a foreign corporation engaged in the worldwide manufacture and distribution of boats. Sea Ray's manufacturing facilities were located outside Alabama, and it had a sales agent, much like Pendleton in the present case, who visited North Alabama Marine once a month. North Alabama Marine was a dealer in Sea Ray's products. The dealership agreement between North Alabama Marine and Sea Ray required, among other things, that North Alabama Marine advertise and display Sea Ray products, that it maintain inventories, that it service Sea Ray products, and that it maintain a place of business within Alabama.
When Sea Ray sued North Alabama Marine, alleging a default on a security agreement, North Alabama Marine asserted that Sea Ray's activities in Alabama, which were limited to the shipment of its products into the state, together with occasional assistance and supervision consistent with and incidental to the promotion and sale of its goods in interstate commerce, were sufficiently intrastate in nature to subject Sea Ray to the constitutional and statutory prohibitions against an unqualified foreign corporation's conducting business in Alabama.
In holding that Sea Ray's activities conducted within Alabama were merely incidental to the transaction of interstate business, this Court stated that simply overseeing the performance of contracts inside the state will not preclude a corporation engaged in interstate commerce from enforcing such contracts in our courts. We further noted that a rule prohibiting the enforcement of such contracts would be an unacceptable impediment to the flow of interstate commerce. *Page 230 
We find the present case to be virtually indistinguishable from North Alabama Marine. Bend and Pozzi's activities in having Pendleton act as liaison with companies selling and distributing their products were merely incidental to the transaction of interstate commerce. Bend and Pozzi were manufacturing and selling products from their factory and offices in Bend, Oregon, through a network of authorized distributors. Under these facts, we hold that Bend and Pozzi are not prohibited by §§ 10-2A-247 or 40-14-4, or by Art. XII, § 232, from filing an action in Alabama to collect on Sharer's guaranty. Therefore, we conclude that the trial court properly denied Sharer's summary judgment motion alleging that Bend and Pozzi were not qualified to do business in Alabama, and that it properly entered Bend and Pozzi's summary judgment.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.
[1] While Sharer raises a number of other issues on appeal, he did not raise those issues in his arguments before the trial court. Therefore, those issues are not properly before this Court. Rule 28, A.R.App.P.