980 So.2d 991 (2007)
SHERMAN INDUSTRIES, INC.
v.
Rebecca ALEXANDER and Robert C. Dark, Jr.
2060369.
Court of Civil Appeals of Alabama.
August 31, 2007.
*992 Chesley P. Payne and Shay N. Click of Massey, Stotser & Nichols, P.C., Birmingham, for appellant.
L. Lee Sims, Dadeville, for appellees.
MOORE, Judge.
Sherman Industries, Inc. ("Sherman"), appeals from a summary judgment in favor of Robert C. Dark, Jr., and Rebecca Alexander. We reverse and remand.

Procedural History
On March 16, 2006, Sherman filed a complaint against Dark Alexander & Co., Inc. ("Dark Alexander"), Robert C. Dark, Jr., and Rebecca Alexander. Sherman alleged that it had sold materials to Dark Alexander and that Dark Alexander had failed to pay for those materials. Sherman further alleged that Dark and Alexander had agreed to guarantee the debts of Dark Alexander. Sherman requested that the court enter a judgment against Dark Alexander, Dark, and Alexander for the amount of the debt, $11,133.71, plus interest, attorney fees, and costs. On March 24, 2006, Dark Alexander, Dark, and Alexander answered Sherman's complaint.
On September 8, 2006, Sherman filed a motion for a summary judgment, along with a brief and evidentiary materials in support of that motion. On November 7, 2006, Dark Alexander, Dark, and Alexander filed a response to Sherman's motion, and Dark and Alexander filed a cross-motion for a summary judgment, along with a brief and evidentiary materials in support thereof. On November 27, 2006, Sherman filed a response to the cross-motion for a summary judgment. After a hearing on November 27, 2006, the court entered a summary judgment in favor of Dark and Alexander on November 29, 2006; that same day the court entered a summary judgment in favor of Sherman and against Dark Alexander in the amount of $17,962.47. On December 28, 2006, Sherman filed a motion to alter, amend, or vacate the November 29, 2006, judgment in favor of Dark and Alexander or, in the alternative, a motion for a new trial. On December 29, 2006, the court denied Sherman's postjudgment motion. On January 22, 2006, Sherman filed its notice of appeal to this court.

Facts
Dark and Alexander are officers of Dark Alexander. On November 12, 1996, Dark Alexander submitted a credit application to Superock Block Co., Inc. ("Superock"). As a part of that credit application, Dark *993 and Alexander executed a continuing guaranty agreement that provided:
"FOR VALUE RECEIVED, and for the purpose of inducing Superock Block Co., Inc. (hereinafter called the 'Creditor') to extend credit or other financial accommodation, or to continue to extend credit or other financial accommodations to . . . Dark Alexander & Co., Inc. . . . the undersigned Robert L. Dark, Jr./Rebecca A. Alexander . . . hereby guaranty(s) absolutely and unconditionally the prompt payment when due of any and all indebtedness of the Debtor to Creditor, together with such interest as may accrue thereon, whether such indebtedness is incurred as principal, guarantor or endorser, is direct or indirect, absolute or contingent, due or to become due, or whether such indebtedness is now existing or arises hereafter and in addition the undersigned agree(s) to pay all costs of collection, legal expenses and attorney's fees paid or incurred by the Creditor in collecting and/or enforcing the guaranty (all such indebtedness, interest, cost, expenses and fees being hereinafter called the `indebtedness').
"No extension or renewal of time of payment of the indebtedness, no release or surrender of any security for the indebtedness or this guaranty, no release of any person primarily or secondarily liable on the indebtedness, no delay in enforcement of payment of the indebtedness of this guaranty shall affect the liability of any of the undersigned hereunder. Any and all payments upon the indebtedness made by the Debtor by any of the undersigned or by any other person, and the proceeds of any and all collateral or security of any of the indebtedness, may be applied by the Creditor upon such of the items or the indebtedness as the Creditor shall determine.
"Each of the undersigned waives notice of acceptance of this guaranty, notice of the extension of credit or financial accommodation to the Debtor, notice of the amount of indebtedness which may exist from time to time, notice of any extension of the time for payment, demand for payments, notice of non-payment, protest, notice of protest, and all other notices of every kind and nature, and agrees that this guaranty may be enforced against the undersigned without any prior proceeding or action against the Debtor.
"This guaranty is a continuing guaranty and shall remain in full force and binding upon the undersigned and his or their heirs, executors and administrators, notwithstanding the death of one or more of the undersigned, until the expiration of thirty (30) days after written notice by Certified or Registered Mail of revocation is received by the Creditor at its office at 3301 27th Avenue North, Birmingham, AL and until any and all indebtedness of the Debtor to the Creditor incurred prior to the expiration of such thirty (30) day period shall have been fully paid.
"If this guaranty is executed by more than one person, it shall be the joint and several obligation of said persons.
"If this guaranty is executed by a corporation, the undersigned officer of said corporation represents and warrants that the corporation has the power to make such guaranty, that the execution by him on behalf of the corporation has been duly authorized and that the making of such guaranty is in the best interest of the corporation.
"All obligations are payable and performable at 3301 27th Avenue North, Birmingham, AL. The guarantor hereby waives the benefit of all homestead exemption laws."
*994 In 1996, Dark Alexander made a purchase from Superock. Alexander testified in her affidavit, however, that she could not recall Dark Alexander's having purchased any other product from Superock since the 1996 purchase.
Sherman subsequently acquired Superock.[1] Throughout 2006, Dark Alexander purchased items from Sherman but failed to pay for its purchases in a timely manner. At the time this action was instituted, Dark Alexander owed Sherman $11,133.71.

Standard of Review
"`We review a summary judgment de novo, applying the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P. The court must view the evidence in a light most favorable to the nonmoving party and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1982).'"
Hunt v. Atrex, Inc., 963 So.2d 122, 123 (Ala.Civ.App.2007) (quoting Bailey v. R.E. Garrison Trucking Co., 834 So.2d 122, 123 (Ala.Civ.App.2002)).

Discussion
On appeal, Sherman argues that because Dark and Alexander failed to revoke the guaranty agreement in accordance with its terms, the trial court should have held them liable for the debt of Dark Alexander. Sherman cites Sharer v. Bend Millwork Systems, Inc., 600 So.2d 223 (Ala. 1992), in support of its argument. In Sharer, the Alabama Supreme Court held that because the guaranty agreement in that case clearly provided that the only way to terminate the guaranty was to provide written notice of that revocation and because the guarantor had not provided such notice, the guarantor remained obligated pursuant to the guaranty agreement. 600 So.2d at 227. The Supreme Court recently reiterated this principle in Barnett Millworks, Inc. v. Guthrie, 974 So.2d 952, 957 (Ala.2007), stating:
"[A] provision in a continuing guaranty agreement that requires a particular method of revocation must be given effect as written, even though a continuing personal guaranty of payment itself is considered only an offer and, absent a contrary provision, may be unilaterally revoked by the guarantor so long as notice of the revocation is communicated to the creditor.

*995 "In the present case, the guaranty agreement provided only one way to cancel the agreementwith the expressed written consent of Barnett Millworks. It is undisputed that Barnett Millworks never gave such written consent. Therefore, [the guarantor's] attempted revocation was ineffective, and the terms of the agreement must be enforced as written."
974 So.2d at 957.
In the present case, the guaranty agreement clearly provided only one way to revoke the guaranty: by "written notice by Certified or Registered Mail." It is undisputed that no such written notice was provided. Accordingly, based on the Supreme Court's holdings in Barnett, supra, and Sharer, supra, the guaranty must be enforced as written.
Dark and Alexander argue, however, that there was no understanding that the guaranty was intended to run indefinitely. They further state that the guaranty is too old and too stale to be enforced. In support of their argument, Dark and Alexander cite William R. Hubbell Steel Corp. v. Epperson, 679 So.2d 1131 (Ala.Civ.App. 1996), in which this court stated:
"[T]he trial court determined 'that it would not be reasonable for [the guarantor] to remain liable for Temco's debts over nine years after he executed the guaranty agreement.' After reviewing the record, we agree with the trial court's determination.
"We find that considering the totality of the circumstances, in this instance the trial court did not err to reversal in finding in favor of [the guarantor]. Stated differently, the trial court's reliance on the general principles of law, as stated in its order, was not misplaced.
"These principles of law are: (1) when there is no fixed time for performance stated in a contract, the law presumes that a 'reasonable time' was intended, Restatement (Second) of Contracts § 33; (2) a guaranty, as other contracts, is complete when the minds of the parties to the guaranty meet in mutual assent, Barnett Bank [v. Marable], 385 So.2d 66 [(Ala.Civ.App.1980)]; and (3) when there is a continuing guaranty, which is unlimited in duration, the period of time for which it is valid must be reasonable, in light of the circumstances of the particular case. Mamerow [v. National Lead Company], 206 Ill. 626, 69 N.E. 504 [(1903)]."
679 So.2d at 1133.
In Epperson, however, there was no evidence presented indicating that the guaranty agreement in that case provided a specific and exclusive means by which the guaranty could be revoked. Further, in Epperson, the guarantor presented evidence showing that the guarantor had not been involved in the transactions that had resulted in the debt at issue in that case. In the present case, however, the evidence indicates that the guaranty agreement provided a specific and exclusive means by which the guaranty could be revoked. Further, in the present case, there is no evidence indicating that the guarantors were not involved in the operations of Dark Alexander during the time in which the debt at issue accumulated. In fact, the evidence indicates that in 2006 Dark served as president of Dark Alexander and Alexander served as secretary of Dark Alexander. Based on the foregoing, we find Epperson distinguishable from the present case.
We conclude that we are bound by the controlling authority of the Supreme Court set forth in Barnett, supra, and Sharer, supra. Therefore, we hold that because Dark and Alexander failed to revoke the guaranty agreement pursuant to the terms of that agreement, the trial court should *996 have enforced the terms of the guaranty agreement as written.
We further find that Dark and Alexander's recognition of the fact that Sherman "acquired" Superock was sufficient to create a genuine issue of material fact as to whether Sherman acquired all of Superock's assets, including the guaranty agreement.
Accordingly, we reverse the trial court's judgment in favor of Dark and Alexander and remand the cause for further proceedings consistent with this opinion.[2]
REVERSED AND REMANDED.
THOMPSON, P.J., and BRYAN, J., concur.
THOMAS, J., concurs specially.
PITTMAN, J., concurs in the result, without writing.
THOMAS, Judge, concurring specially.
I am in complete agreement with the main opinion as to the reasoning and outcome of this case. However, I write specially to note my concern with this court's reliance on Barnett Millworks, Inc. v. Guthrie, 974 So.2d 952 (Ala.2007), in addition to Sharer v. Bend Millwork Systems, Inc., 600 So.2d 223 (Ala.1992), as authority for its decision.
As the main opinion points out, the Alabama Supreme Court held in Sharer that when a guaranty agreement clearly provides that the only way to terminate the guaranty is for the guarantor to provide written notice of revocation to the creditor, the guarantor remains obligated under the guaranty agreement until such notice is provided. 600 So.2d at 227. In the present case, the language in the guaranty agreement specifically stated that the guaranty was a "continuing guaranty" that was to "remain in full force and binding upon the [guarantors and their heirs] . . . until the expiration of thirty (30) days after written notice by Certified Mail or Registered Mail of revocation is received by the Creditor . . . and until any and all indebtedness of the Debtor to the Creditor incurred prior to the expiration of such thirty (30) day period shall have been fully paid." Therefore, under the reasoning in Sharer, because Dark and Alexander did not provide proper notice of revocation to Sherman, as specified in the guaranty agreement, Dark and Alexander remained obligated under the agreement, and the summary judgment in their favor was error. Sharer, 600 So.2d at 227.
The main opinion additionally relies on Barnett Millworks to reach its conclusion in this case. In Barnett Millworks, the Alabama Supreme Court reiterated the above-mentioned principle espoused in Sharer and in other cases, but it applied the principle to the unique situation in that case, in which the guarantor allegedly waived the authority to revoke its guaranty and conditioned its ability to revoke the guaranty upon receiving the written consent of the creditor.[3] The revocation provision in the guaranty agreement in Barnett stated as follows: "`I agree this Guarantee of Payment can only be cancelled with the expressed written consent of [the creditor,] Barnett Millworks, Inc.'" *997 Barnett Millworks, 974 So.2d at 955 (emphasis added).
My concern with the main opinion's reliance on Barnett Millworks is twofold. First, because Barnett Millworks is a case in which the guarantor, in effect, transferred to the creditor its right to revoke its guarantyi.e., its offer of security as to all past and future extensions of credit to the principal debtorit is distinguishable from the present case, which deals with guarantors who have expressly retained the right to revoke their offer of security.[4] Consequently, Barnett Millworks should be relied upon in this case only for its reiteration of the principle found in Sharer and in other cases, i.e., that "a provision in a continuing guaranty agreement that requires a particular method of revocation must be given effect as written. . . ." Barnett Millworks, 974 So.2d at 957.
My second concern with the main opinion's reliance on Barnett Millworks is that its application can easily lead to unconscionable results. Regardless of whether a guarantor is fully aware of the potential consequences of transferring to a creditor the equivalent of an "irrevocable" pledge of security for credit extended to the specified beneficiaries in the guaranty agreement, the result is that the creditor and beneficiaries are in a position to do endless harm to the guarantor, especially when the guaranty agreement is one that is "continuous" until revoked. Although both the main opinion and the dissent in Barnett Millworks agree that, absent express intent to the contrary, guarantors hold the authority to unilaterally revoke the offer to provide security for future extensions of credit to the principal debtor, I agree with the dissenting opinion in Barnett Millworks, which reasoned that in light of the presumption that the guarantor retains the unilateral power of revocation, and in light of the unreasonable result if the rule were otherwise (i.e., the guarantor's perpetual obligation to the creditor for credit extended to a third party, subject only to the discretion of the creditor to terminate that obligation), the revocation provision in Barnett Millworks "reasonably [could have been], and should [have been], construed as merely explaining the method of terminating [the guarantor's] guaranty obligations as to 'transactions between the creditor and principal debtor which have been completed.'" Barnett Millworks, 974 So.2d at 959 (Murdock, J., dissenting, joined by Cobb, C.J.) (quoting 38 Am. Jur.2d Guaranty § 60 (1999)). See also 38A C.J.S. Guaranty § 40 (1996)(the intent to make a continuing guaranty irrevocable must be clearly and unequivocally expressed).
NOTES
[1] Dark and Alexander recognized in their summary-judgment motion and brief in support thereof that Sherman did, in fact, acquire Superock.

In support of its postjudgment motion, Sherman submitted a supplemental affidavit of its credit manager stating that when Sherman purchased Superock, it purchased all accounts receivable, credit contracts, guaranty contracts, and credit accounts of Superock. The credit manager also testified in her affidavit that Sherman continued selling materials under those contracts. Because Sherman failed to offer any explanation for its delay in presenting this evidence, however, it is not properly considered on appeal. See, e.g., Ex parte Organized Cmty. Action Program, Inc., 852 So.2d 92, 93-95 (Ala.2002).
[2] Because we reverse the trial court's judgment based on Sherman's first argument, we pretermit discussion of its second point of error.
[3] The main opinion in Barnett Millworks stated that the Court had "not before interpreted a provision in a continuing guaranty agreement that [gave] the creditor absolute authority to decide when the agreement [could] be terminated." Barnett Millworks, 974 So.2d at 955.
[4] The guarantor is considered the "offeror" in guaranty agreements. See Barnett Millworks, 974 So.2d at 955; 38 Am.Jur.2d Guaranty § 60 (1999); and 38A C.J.S. Guaranty § 40 (1996).